UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

RONALD A. ROGANTI,

                              Plaintiff,

                – against –

METROPOLITAN LIFE INSURANCE COMPANY,
METROPOLITAN LIFE RETIREMENT PLAN FOR
UNITED STATES EMPLOYEES, SAVINGS AND
INVESTMENT PLAN FOR EMPLOYEES
OF METROPOLITAN LIFE AND PARTICIPATING
AFFILIATES, THE METLIFE AUXILIARY
PENSION PLAN, AND THE METROPOLITAN
LIFE SUPPLEMENTAL AUXILIARY SAVINGS
AND INVESTMENT PLAN,

                              Defendants.

-------------------------------------------------------------------X

Civil Action No.: 12-cv-0161(PAE)

DOCUMENT
ELECTRONICALLY FILED

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

SEDGWICK LLP
**Attorneys for Defendants**
125 Broad Street, 39th Floor
New York, New York 10004
Telephone: (212) 422-0202
Facsimile: (212) 422-0925
[Sedgwick File No. 00584-007694]

Michael H. Bernstein
Charles H. Kaplan
John T. Seybert
Daniel M. Meier
   *Of counsel*

NY/855346v1

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ...................................................................................................................................2

      POINT I:

      ALL OF ROGANTI'S CAUSES OF ACTION ARE BARRED BY
      *RES JUDICATA* .................................................................................................................2

      POINT II:

      ALL OF ROGANTI'S CAUSES OF ACTION ARE BARRED BY
      COLLATERAL ESTOPPEL ....................................................................................................4

      POINT III:

      ROGANTI'S CLAIMS OF AN ERISA VIOLATION AND OF SOX
      RETALIATON FAIL TO STATE A CLAIM FOR WHICH RELIEF
      CAN BE GRANTED AS A MATTER OF LAW ........................................................................6

      POINT IV:

      PLAINTIFF'S SOX CAUSE OF ACTION IS TIME BARRED .....................................................9

CONCLUSION ..............................................................................................................................10

CERTIFICATE OF SERVICE ..........................................................................................................12

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Anonymous Oxford Health Plan Member With ID#6023604\*01* v. *Oxford Health Plans (N.Y.), Inc.*,
No. 08-cv-943 (PAC), 2009 WL 667237 (S.D.N.Y. Mar. 16, 2009) .................................... 9

*Burch* v. *United States*,
698 F.2d 575 (2d Cir. 1983) .................................................................................................. 7

*Farber* v. *Goldman Sachs Group, Inc.*,
No. 10 Civ. 873, 2011 WL 666396 (S.D.N.Y. Feb. 16, 2011) ........................................ 2, 4

*Hobson* v. *Metropolitan Life Ins. Co.*,
574 F.3d 75 (2d Cir. 2009) ................................................................................................ 6, 8

*Interoceanica Corp.* v. *Sound Pilots, Inc.*,
107 F.3d 86 (2d Cir.1997) ................................................................................................ 3, 4

*Juliano* v. *Health Maint. Org. of N.J.*,
221 F.3d 279 (2d Cir. 2000) .................................................................................................. 8

*Krauss* v. *Oxford Health Plans (NY), Inc.*,
517 F.3d 614 (2d Cir. 2008) .................................................................................................. 9

*McCauley* v. *First Unum Life Ins. Co.*,
551 F.3d 126 (2d Cir. 2008) .................................................................................................. 9

*Metropolitan Life Ins. Co.* v. *Glenn*,
554 U.S. 105 (2008) ............................................................................................................... 8

*Monahan* v. *N.Y. City Dep't of Corr.*,
214 F.3d 275 (2d Cir. 2000) .................................................................................................. 2

*Poltes v. Wyeth*,
No. 06 Civ. 2689 (WHO), 2007 WL 2363356 (S.D.N.Y. Aug. 20, 2007) ...................... 10

*Ryan v. New York Tel. Co.*,
62 N.Y.2d 494, 478 N.Y.S.2d 823 (N.Y. 1984) ................................................................ 4

*Willis v. Vie Fin Group, Inc.*,
21 IER Cases 1111, 2004 WL 1774575 (E.D. Pa. Aug. 6, 2004) ................................ 9, 10

*Woods* v. *Dunlop Tire Corp.*,
972 F.2d 36 (2d Cir. 1992) .................................................................................................. 4

*Woodward* v. *Commissioner*,
    397 U.S. 572, 90 S.Ct. 1302 (1970) ...........................................................................................7

## STATUTES

Employee Retirement Income Security Act of 1974, as amended,
    29 U.S.C. §1001, *et seq.* ("ERISA") ........................................................................................1

18 U.S.C. § 1514(A)(b)(l) ...............................................................................................................10

9 U.S.C. §12 ......................................................................................................................................8

Sarbanes-Oxley Act of 2002, as amended, 18 U.S.C. §1514A ("SOX") ....................................1

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5 ............................9

## RULES

Rule 12(b)(6), Fed. R. Civ. P. ..........................................................................................................1

**PRELIMINARY STATEMENT**

Defendants, Metropolitan Life Insurance Company ("MetLife"), Metropolitan Life Retirement Plan for United States Employees, the MetLife Auxiliary Pension Plan (the "Plans"), Savings and Investment Plan for Employees of Metropolitan Life and Participating Affiliates, and the Metropolitan Life Supplemental Auxiliary Savings and Investment Plan (the "SIP Plans") (collectively referred to as "Defendants"), respectfully submit this Reply Memorandum of Law in further support of their motion pursuant to Rule 12(b)(6), FED. R. CIV. P., for an order dismissing plaintiff Ronald A. Roganti's ("Roganti") Complaint (the "Complaint") as barred by the doctrines of *res judicata* and collateral estoppel and for failing to state a cause of action under the Sarbanes-Oxley Act of 2002, as amended, 18 U.S.C. §1514A ("SOX") and under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001, *et seq.* ("ERISA").[1]

After engaging in a thorough FINRA arbitration proceeding concerning his claims for lost wages and reduced pension benefits in connection with several SOX retaliation causes of action, the arbitration Panel awarded only a portion of the relief Roganti had requested, limited to general compensatory damages, and specifically denied relief in the form of back pay, front pay or additional pension benefits. Roganti's Complaint is a blatant attempt to relitigate these claims, which were fully and finally adjudicated in the FINRA arbitration. The doctrines of *res judicata* and collateral estoppel bar such attempts to relitigate these same claims and issues. Roganti's pretextual submission of an ERISA claim for benefits that he knew were unavailable under the Plans and SIP Plans by virtue of the FINRA Panel's arbitration award (the "Award") does not provide him with the right to relitigate issues which have been fully and fairly litigated in the prior proceeding.

Roganti's ERISA cause of action fails to state a claim for which relief can be granted. Specifically, MetLife's interpretation and application of the terms of the Plans and SIP Plans to find that the Award did not constitute "benefit eligible compensation" was consistent with the holdings of the Panel and reasonable as a matter of law.

Finally, Roganti's failure to properly exhaust the requisite administrative requirements under SOX renders his causes of action under that statute deficient as a matter of law.

---

[1] Roganti voluntarily dismissed his Count Two, alleging violations of the Dodd-Frank Act of 2010. (Doc. No. 12).

NY/855346v1

For these reasons, and as discussed more fully below, Roganti's Complaint should be dismissed in its entirety.

## ARGUMENT
## POINT I
## ALL OF ROGANTI'S CAUSES OF ACTION ARE BARRED BY *RES JUDICATA*

Defendants demonstrated in their opening brief that Roganti's action is barred because he already litigated the same claims raised therein in the FINRA arbitration. (Defs. Br., pp. 10-14).[2] Having fully litigated these claims in this prior proceeding, Roganti cannot now relitigate them in this Court to obtain additional relief that was specifically denied in the Award. As explained in the Defendants' initial brief, *res judicata* prohibits a claim from being relitigated when: (1) the previous action involved an adjudication on the merits; (2) the prior action involved the same parties and/or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action. (Defs. Br., p. 10). Roganti does not dispute that the FINRA Arbitration involved an adjudication on the merits, so the first element for *res judicata* is met by this concession.

Roganti argues that the Plans and SIP Plans were not parties to the FINRA arbitration, and thus *res judicata* does not apply because there is no showing that the parties to both actions are the same. (Pl. Br., p. 17).[3] However, this Court has held that *res judicata* bars an action involving the same individual plaintiff and an entity related to the defendant in the subsequent federal court action where the entity's interests were represented by another vested with the authority of representation. *Farber* v. *Goldman Sachs Group, Inc.*, No. 10 Civ. 873, 2011 WL 666396, at *5 (S.D.N.Y. Feb. 16, 2011); *Monahan* v. *N.Y. City Dep't of Corr.*, 214 F.3d 275, 85 (2d Cir. 2000). Here, the Plans and SIP Plans are all related to MetLife (the defendant in the FINRA Arbitration) and Roganti does not dispute Defendants' showing on this point. (Defs. Br., p. 12). Instead, Roganti argues that the arbitration panel did not hear testimony from a plan administrator for the Plans or SIP Plans during the arbitration. (Pl. Br., p. 18). This argument is demonstrably false because MetLife, a defendant in both the FINRA arbitration and the current action, is the Plan Sponsor for all of the

---

[2] "Defs. Br." refers to Defendants' Memorandum of Law In Support Of Motion To Dismiss Plaintiff's Complaint dated March 19, 2012.
[3] "Pl. Br." refers to Plaintiff's Memorandum of Law In Opposition To Defendants' Motion To Dismiss The Complaint dated April 20, 2012.

Plans and SIP Plans. (Defs. Br., p. 12). Accordingly, the interests of the Plans and SIP Plans were fully represented by MetLife during the FINRA arbitration and therefore the second element for *res judicata* is met.

Roganti also argues that since the Plans and SIP Plans were not parties to the arbitration, the arbitrators had no reason to determine whether the Award should be treated as benefit eligible compensation. This argument ignores the numerous times throughout the FINRA arbitration that Roganti claimed that MetLife improperly attempted to reduce his pension benefits and even demanded a monetary award in this respect. Specifically, Roganti's Statement of Claim ("SOC") explained how his pension is calculated, asserted that MetLife improperly reduced his compensation in an effort to reduce his pension benefits in violation of ERISA, and demanded an award of "appropriate back pay, front pay and reimbursement for lost benefits." (SOC ¶¶ 27, 90, WHEREFORE ¶ ii). In response, the Award found that MetLife was liable for compensatory damages in an amount "above its existing pension and benefit obligation to Claimant." (Complaint, Ex. "B," p. 2). Accordingly, the arbitration panel specified exactly how Roganti's award should be considered in light of his pension and the absence of the Plans and SIP Plans as parties to the arbitration had no impact in this regard.

Roganti argues in his opposition that "[t]he wrongs that give rise to the federal case did not exist at the time that the arbitrators decided the FINRA case and thus, the issues adjudicated in the arbitration were not the same as those raised in this action." (Pl. Br., p. 17). Relying on *Interoceanica Corp.* v. *Sound Pilots, Inc.,* 107 F.3d 86, 90 (2d Cir.1997), Roganti asserts that *res judicata* is inapplicable because there was no "relationship to time, space or origin" between the claim in the underlying action and in the one litigated in arbitration, which is required by the Second Circuit to demonstrate that the second suit involves the same claim as the first. (Pl. Br., pp. 20-21). However, unlike the facts in *Interoceanica Corp.*, Roganti's claims in this action are *identical* to those in the FINRA arbitration. Specifically, Roganti alleges in his Complaint that MetLife wrongfully denied his claim for an increase in his benefits under the Plans and SIP Plans to account for the Award and demands that this amount be considered "benefit eligible compensation" for purposes of calculating benefits due to him. (Complaint, ¶¶ 87-90; Ex. "C," p. 1). These issues were already addressed and adjudicated during the arbitration, in which Roganti sought "back pay, front pay,

3

reimbursement for lost benefits," alleged that MetLife improperly reduced his compensation for the purpose of diminishing his retirement benefits and that MetLife violated ERISA by unjustifiably reducing his compensation in an effort to reduce his pension benefits. (SOC ¶¶ 1, 90, WHEREFORE ¶ (ii)). The Award, however, only granted Roganti general compensatory damages of "$2,492,442.07 above [MetLife's] existing pension and benefit obligation[s]." (Complaint, Ex. "B," p. 2). No new facts existed or were submitted to MetLife in connection with Roganti's ERISA benefit claim, and he only submitted the Award and evidence presented at this arbitration to support this claim. *Interoceanica Corp.*, 107 F.3d at 90 ("Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, [and] whether the same evidence is needed to support both claims."). Because the arbitration and the current action "spring from the same 'transaction' or 'claim,'" the third element for application of *res judicata* is satisfied. *See also Woods* v. *Dunlop Tire Corp.*, 972 F.2d 36, 39 (2d Cir. 1992); *Farber*, 2011 WL 666396, at *5. Roganti's filing of a post-Award ERISA claim for benefits does nothing to change the foregoing analysis. The filing of this claim was pretextual; it was clear that the relief Roganti sought had previously been denied by the FINRA panel, as MetLife ultimately determined. (Complaint, Ex. "C," p. 3). Roganti's attempt to challenge this benefit decision is nothing more than an attempt to relitigate the issues and relief denied by the FINRA panel.

Since all three of the required elements for application of *res judicata* have been met, Roganti's action is barred and must be dismissed.

### POINT II
### ALL OF ROGANTI'S CAUSES OF ACTION ARE BARRED BY COLLATERAL ESTOPPEL

Collateral estoppel precludes a party from relitigating in a subsequent proceeding an issue raised and decided against that party in an earlier proceeding. *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 826 (N.Y. 1984). Collateral estoppel, or "issue preclusion," applies when: (1) there is identity of issues necessarily decided in the prior proceeding; and (2) the party against whom collateral estoppel is asserted had a full and fair opportunity in the prior proceeding to litigate those issues. *Id.* at 501, 478 N.Y.S.2d at 826-27. For the reasons set forth in Defendants' moving brief, these requirements are all satisfied in this action. (Defs. Br., pp. 14-16).

4

The first criteria is met because the issues raised in Roganti's Complaint are identical to the issues that the FINRA panel previously decided in the arbitration. These issues are: (i) whether MetLife was liable for retaliatory acts against Roganti; (ii) whether Roganti was owed "back pay, front pay and reimbursement for lost benefits"; and (iii) whether MetLife wrongfully reduced Roganti's compensation to effect a reduction of his retirement benefits. Indeed, the FINRA panel specifically addressed and ruled upon Roganti's claims concerning MetLife's purportedly retaliatory acts with respect to violations of SOX and for "lost benefits" and specifically denied his claims for this relief, granting instead only general compensatory damages that were "above [MetLife's] existing pension and benefit obligations." (Complaint, Ex. "B," p. 2).

The second criteria is also met because Roganti had a full and fair opportunity to litigate these issues – and indeed, raised them repeatedly – before the arbitrators, as demonstrated above. Additionally, the fact that the FINRA panel specifically designated the Award as being "above [MetLife's] existing pension and benefit obligations" demonstrates that it considered how the award should be treated with respect to any pension or benefit claims.

Roganti argues that the issues raised in his Complaint are not barred by collateral estoppel because he did not yet receive a full and fair hearing concerning any of them. Roganti contends that his Complaint addresses issues that only arose when MetLife denied his ERISA claim asking that the Award be treated as benefit eligible compensation. (Pl. Br., pp. 18-19). But as is demonstrated by Roganti's SOC and the arbitration proceedings previously held, Roganti claimed throughout the previous proceeding that he was entitled to receive the very pension and retirement benefits he sought in his ERISA claim and now seeks in his Complaint. The FINRA arbitration panel considered each of these claims and <u>specifically denied them</u>. (Defs. Br., p. 16). Roganti's opposition establishes that he fully litigated all of these issues during his 17-day arbitration hearing, including whether any part of the Award is to be designated "benefit eligible income" for purposes of calculating his retirement and pension benefits. (Pl. Br., p. 4). To the extent Roganti believed the Panel's determination was unclear, he could have sought to vacate the Award or sought clarification in a timely manner, which he failed to do.

5

Accordingly, Roganti is collaterally estopped from seeking further relief with respect to issues that were fully and fairly adjudicated in the prior proceeding and his Complaint should therefore be dismissed.

### POINT III
### ROGANTI'S CLAIMS OF AN ERISA VIOLATION AND OF SOX RETALIATON FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED AS A MATTER OF LAW

MetLife determined, pursuant to the terms of the Plans and SIP Plans, that in order for any amount to be considered benefit eligible compensation, it must be earned by an individual who is employed and compensated by MetLife.  Therefore, any payments made by MetLife to individuals at a time when they are no longer eligible employees do not constitute benefit eligible compensation under the Plans or SIP Plans. (Bernstein Decl., Ex. "C," §1.21; Complaint, Ex. "C," p. 2; Defs. Br., p. 22).  Roganti does not dispute the applicable terms of the Plans or SIP Plans, nor does he challenge the fact that MetLife has been vested by the Plans and SIP Plans with discretionary authority to interpret these terms.  Therefore, the court may only overturn MetLife's interpretation of these Plan terms if it finds that interpretation to be arbitrary and capricious. *See Hobson* v. *Metropolitan Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009).  (Defs. Br., p. 21).   It is undisputed that the Award was issued in 2010, at a time when Roganti was no longer employed by MetLife.  It is also undisputed that the FINRA panel did not allocate any part of the Award to any year during which Roganti was employed by MetLife.  Consequently, the Award could not be considered Annual Compensation earned by a Commissioned Employee under the Plans or SIP Plans, nor was it the sort of compensation defined by and required under the Plans and SIP Plans to be paid to Commissioned Employees for purposes of calculating benefits. (Defs. Br., p. 22).

Notwithstanding the foregoing, Roganti offers several arguments in support of his claim that the Award should be classified as benefit eligible compensation.  First, Roganti argues that the Award should be considered benefit eligible compensation because the IRS Form 1099-MISC, issued to him by MetLife in connection with its payment of the Award, designated the amount as "Nonemployee compensation."  (Pl. Br., p. 3).  Notably, however, the fact that MetLife issued a 1099 form and not a W-2 form confirms that the Award was not compensation to an employee.  While a W-2 form is distributed to employees, 1099 forms are issued to self-employed workers or

6

independent contractors.[4]  Thus, rather than raising any issue of fact concerning whether the Award is benefit eligible compensation, MetLife's issuance of a 1099 form constitutes further objective proof that the Award was not designated by MetLife as employee salary nor considered benefit eligible compensation under the Plans and SIP Plans.

Second, while Roganti argues that MetLife's designation of the Award on the 1099 as "nonemployee compensation" somehow raises an issue of fact about whether the Award is benefit eligible compensation, this designation has nothing to do with anything relevant to this litigation.  The designation was made in this manner in compliance with applicable tax law and Internal Revenue Service ("IRS") rules on point.  Specifically, under the "origin of the claim" doctrine, the issuer must classify an amount on a 1099 form so that the IRS can determine deductibility by "looking to the 'origin' or 'character' of the claim litigated rather than to the subjective 'purpose' of the taxpayer in pursuing it."  *Burch* v. *United States,* 698 F.2d 575, 577-78 (2d Cir. 1983) ("The 'origin of the claim' rule . . . 'does not contemplate a mechanical search for the first in a chain of events which led to the litigation. . . . . The inquiry is directed to the ascertainment of the 'kind of transaction' out of which the litigation arose."); *see also Woodward* v. *Commissioner,* 397 U.S. 572, 577-78, 90 S.Ct. 1302, 1306 (1970).  Here, Roganti claimed in the FINRA arbitration that MetLife wrongfully reduced his compensation to effect a reduction in his pension benefits.  MetLife was therefore, required by the "origin of the claim" doctrine to designate the Award as "nonemployee compensation" on the 1099 Form issued to Roganti in connection with the Award.  Nothing about this designation informs the question of whether the Award itself was for benefit eligible compensation.

Third, Roganti argues that MetLife's basis for denying his ERISA claim was nonsensical because if the Award could not be considered benefit eligible employee compensation due to the fact that it occurred in 2010, while Roganti's employment ended in 2005, then no post-employment award could ever be treated as benefit eligible compensation.  (Pl. Br., p. 5).  Roganti's argument ignores the fact that MetLife's adverse benefit determination was not solely based on the timing of the Award.  Rather, MetLife determined that because the Panel had denied Roganti's claim for "appropriate back pay, front pay and reimbursement for lost benefits," no part of the Award constituted

---

[4]  *See* 1099-MISC, Independent Contractors, and Self-employed, IRS, http://www.irs.gov/faqs/faq/0,,id=199741,00.html, (last visited May 14, 2012).

7

such compensation. Roganti baselessly argues that MetLife was required to seek clarification of the Award regarding whether the amount awarded constitutes benefit eligible compensation, but this is a circular argument that assumes that Roganti's position is supported by the text of the Award (which it is not). (Plt. Br., p. 6). To the extent Roganti believed that the Award was unclear, it was <u>his</u> obligation to seek clarification pursuant to 9 U.S.C. §12, not MetLife's. Moreover, Roganti bears the burden of proving his alleged entitlement to benefits; it is not MetLife's duty to prove or disprove the claim. *See Hobson*, 574 F.3d at 89; *Juliano* v. *Health Maint. Org. of N.J.*, 221 F.3d 279, 287-88 (2d Cir. 2000). Thus, Roganti's attempt to shift his burden to provide satisfactory proof of his claim to MetLife is incorrect as a matter of law. *See also Metropolitan Life Ins. Co.* v. *Glenn*, 554 U.S. 105, 116-117 (2008) (holding that special burden-of-proof shifting rules are not appropriate in ERISA benefit cases). Furthermore, while MetLife had no obligation to seek clarification of the Award, it did not find there to be any ambiguity in the Award because the Panel expressly stated that it was "above [MetLife's] existing pension and benefit obligations," and thus, not part of or intended to enhance any pension obligations. (Complaint, Ex. "B," p. 2).

Fourth, Roganti argues that MetLife's final determination letter did not address the Plans and SIP Plan's definitions of compensation. This is demonstrably false as the letter explicitly references the applicable definitions of compensation at numerous points, and even attaches the relevant terms of the Plans and SIP Plans. (*See, e.g.* Complaint, Ex. "D," pp. 2, 5-6). Similarly, Roganti incorrectly argues that MetLife based its denial on the Panel's failure to specifically describe the Award based on the terms of the Plans and SIP Plans, asserting that the Panel did not have a copy of the Plans or SIP Plans. MetLife made no such finding, but rather explained that the Panel did not require it to treat the Award as back pay, front pay or reimbursement, because it had only granted general compensatory damages, denied any and all relief not specifically addressed, and did not allocate the Award to any specific years of service. (Complaint, Ex. "C," pp. 3-4). Moreover, Roganti's arguments challenging whether MetLife's determination was reasonable or whether MetLife provided him with a full and fair review of his claim are irrelevant because the relief sought by Roganti was not available under the Plans or SIP Plans since the Award itself did not state that the amount awarded was to be considered benefit eligible compensation. *See Krauss* v. *Oxford Health*

8

*Plans (NY), Inc.*, 517 F.3d 614-622-23 (2d Cir. 2008) (finding that a procedural violation under ERISA does not result in an award of benefits that was otherwise excluded).

Lastly, Roganti improperly argues that MetLife operated under a conflict of interest and that this point somehow permits his claim to proceed beyond the pleading stage. (Pl. Br., pp. 7-8). Yet, Roganti inconsistently acknowledges that consideration of a conflict of interest is not a relevant issue at the motion to dismiss stage. (Pl. Br., p. 13). As a matter of law, this Court may dismiss Roganti's claim because the relief sought — i.e., recovery of additional benefits under the Plans and SIP Plans — is unambiguously not available under either of them. *See Anonymous Oxford Health Plan Member With ID#6023604*01* v. *Oxford Health Plans (N.Y.), Inc.*, No. 08-cv-943 (PAC), 2009 WL 667237 (S.D.N.Y. Mar. 16, 2009). Accordingly, the existence of a conflict of interest is an irrelevant point at this juncture. Moreover, "[w]here both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." *McCauley* v. *First Unum Life Ins. Co.*, 551 F.3d 126, 132-33 (2d Cir. 2008). Therefore, regardless of any alleged conflict of interest, Roganti has failed to plead a plausible claim that MetLife's interpretation of the terms of the Plans and SIP Plans was arbitrary and capricious and Count Three of the Complaint alleging violations of ERISA should therefore be dismissed with prejudice.

## POINT IV
## PLAINTIFF'S SOX CAUSE OF ACTION IS TIME BARRED

Roganti argues that, consistent with employment discrimination case law discussing the "reasonably related" doctrine, it is not necessary for a claimant to supplement his Equal Employment Opportunity Commission ("EEOC") charge of employment discrimination (under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5 ("Title VII")) with claims of retaliation that occur after his initial filing. Citing *Willis v. Vie Fin Group, Inc.*, 21 IER Cases 1111, 2004 WL 1774575 (E.D. Pa. Aug. 6, 2004), Roganti contends that there are similarities between Title VII and SOX, and that the "reasonably related" doctrine applies to his SOX claims. Thus, Roganti argues that his failure to file a new complaint with the Occupational Safety and Health Administration ("OSHA") related to MetLife's purportedly new act of retaliation (i.e. the denial of his ERISA benefit claim) can be excused.

9

Roganti conveniently ignores the court's conclusion in *Willis*, *supra*, 21 IER Cases 111, holding that the plaintiff employee was "precluded from pursuing his retaliatory termination claim" because under SOX the court "can only conduct a 'de novo review' of those claims that have been administratively exhausted." *Id.* As the court explained, the administrative scheme underlying SOX is judicial in nature and is designed to resolve the controversy on its merits, as opposed to the administrative procedures underlying Title VII, "which are geared toward fostering settlement." *Id.* See *Poltes v. Wyeth*, No. 06 Civ. 2689 (WHO), 2007 WL 2363356 (S.D.N.Y. Aug. 20, 2007).

Further, Roganti's argument that he had to file his Complaint within the 180-day deadline set forth in MetLife's letter is wrong. (Pl. Br., p. 22). The Plan's six month limitation of actions provision set forth by MetLife is irrelevant to Roganti's SOX cause of action. While Plaintiff was required to timely assert his ERISA 502(a)(1)(B) cause of action, nothing about that requirement absolved Roganti from complying with SOX's administrative exhaustion rule.

Roganti's argument that he could not wait to file his Complaint until OSHA issued a new filing is likewise baseless. If Roganti had timely filed the required administrative complaint concerning MetLife's purported new act of retaliation with OSHA, he would have been permitted to properly commence an action in federal court if OSHA did not issue a decision within 180 days, notwithstanding any administrative deadlines concerning MetLife's administrative review of his ERISA claim. *See* 18 U.S.C. § 1514(A)(b)(l). Further, Roganti's background evidence assertion is not relevant. There is no timely SOX claim before this Court; background evidence of Roganti's untimely claim thus has no foreground.

For the reasons discussed in Defendants' moving brief, Roganti had 180 days following MetLife's final adverse determination letter within which to file a complaint with OSHA and to exhaust his administrative remedies. (Defs. Br. Pt. III(A)). There was nothing preventing him from doing so within that time, and his failure to do so renders his claim premature, and ultimately, time-barred.

## CONCLUSION

For the reasons set forth in Defendants' initial moving brief and for the foregoing reasons, this Court should grant MetLife's motion to dismiss Roganti's Complaint in its entirety.

Dated: New York, New York
May 18, 2012

Respectfully submitted,

 \_\_s/_____
MICHAEL H. BERNSTEIN (MB 0579)
CHARLES H. KAPLAN (CK 5801)
JOHN T. SEYBERT (JS 5014)
DANIEL M. MEIER (DM 2833)
SEDGWICK LLP
*Attorneys for Defendants*
125 Broad Street, 39th Floor
New York, New York 10004
Tel:  (212) 422-0202
Fax: (212) 422-0925

11

**CERTIFICATE OF SERVICE**

I, DANIEL M. MEIER, hereby certify and affirm that a true and correct copy of the attached **DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS ROGANTI'S COMPLAINT** was served via ECF and Regular Mail on May 18, 2012, upon the following:

> David G. Gabor Esq.
> The Wagner Law Group
> 99 Summer Street, 13th Floor
> Boston MA  02110
> Business Phone:  (617) 357-5200

Dated:  New York, New York
        May 18, 2012

                                        s/ _____
                                        DANIEL M. MEIER (DM 2833)

NY/855346v1