UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                          :
RONALD A. ROGANTI,                                        :
                                                          :
                                  Plaintiff,              :
                    -v-                                   :
                                                          :
METROPOLITAN LIFE INSURANCE COMPANY,                      :            12 Civ. 0161 (PAE)
METROPOLITAN LIFE RETIREMENT PLAN FOR                     :
UNITED STATES EMPLOYEES, SAVINGS AND                      :            OPINION & ORDER
INVESTMENT PLAN FOR EMPLOYEES OF                          :
METROPOLITAN LIFE AND PARTICIPATING                       :
AFFILIATES, THE METLIFE AUXILIARY PENSION                 :
PLAN, and THE METROPOLITAN LIFE                           :
SUPPLEMENTAL AUXILIARY SAVINGS AND                        :
INVESTMENT PLAN,                                          :
                                                          :
                                  Defendants.             :
                                                          :
------------------------------------------------------------------------X


PAUL A. ENGELMAYER, District Judge:

        Plaintiff Ronald A. Roganti has asserted claims under the Sarbanes-Oxley Act of 2002,

18 U.S.C. § 1514A ("SOX"), and the Employee Retirement Income Security Act of 1974, 29

U.S.C. § 1132 ("ERISA").[1]  Defendants Metropolitan Life Insurance Company, Metropolitan

Life Retirement Plan for United States Employees, Savings and Investment Plan for Employees

of Metropolitan Life and Participating Affiliates, the MetLife Auxiliary Pension Plan, and the

Metropolitan Life Supplemental Auxiliary Savings and Investment Plan (collectively,

"Defendants") move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint

for failure to state a claim; they also argue that Roganti's claims are barred by res judicata and

---

[1] Roganti's Complaint also included a claim (Count Two) under the Dodd-Frank Act of 2010, 15
U.S.C. § 78u-6.  The parties entered a stipulation on April 30, 2012 in which they agreed to
dismiss that claim without prejudice (Dkt. 12).  The Court, therefore, does not address Count
Two in this opinion.

collateral estoppel.  For the following reasons, Defendant's motion is granted as to the SOX

claims and denied as to the ERISA claims.

## I.  Background[2]

### A.  Roganti's Employment with MetLife

Between 1971 and 2005, Roganti was an employee of the Metropolitan Life Insurance

Company ("MetLife") during which time he held various positions, beginning as an Account

Representative and later rising to the title of Vice President of MetLife.  Compl. ¶¶ 10–12.  Over

the course of his tenure, he oversaw R. Roganti & Associates ("RR&A") and the Tower Agency

Group ("TAG"), both of which were sizable subsets of MetLife's New York business.  Compl.

¶¶ 15, 17; SOC ¶¶ 8, 10.

Roganti's relationship with MetLife began to deteriorate in 1999 when he first voiced

concerns regarding allegedly-suspect business practices at MetLife.  SOC ¶ 14.  Although the

parties have provided detailed accounts of the protracted dispute between Roganti and MetLife

between 1999 and 2005, there is no need to recite them here.  In summary, Roganti claims that,

throughout that time period, MetLife repeatedly disregarded his complaints and actively

retaliated against him, including undermining his authority within RR&A and, ultimately,

dissolving the TAG.  *Id.* ¶¶ 15, 20, 28–35, 40–44.  Roganti asserts that MetLife further retaliated

against him by reducing his compensation, *id.* ¶¶ 24, 27, 47, 63, 66, with the specific purpose of

reducing his pension benefits.  *Id.* ¶ 1.

---

[2] The Court's account of the underlying facts is drawn from the Complaint and the exhibits
attached thereto, as well as from exhibits attached to the Declaration of Michael H. Bernstein in
Support of the Defendants' Motion to Dismiss ("Bernstein Decl.").  The Court has also drawn
upon, for relevant factual background, Roganti's Statement of Claim ("SOC") filed with the
National Association of Securities Dealers ("NASD"), which served to initiate the arbitration
administered by the Financial Industry Regulatory Authority ("FINRA") that is central to
Roganti's claims here.

**B. Roganti's 2003 and 2004 Sarbanes-Oxley Complaints**

On May 23, 2003, Roganti filed a complaint with the Occupational Safety and Health Administration ("OSHA"), a unit of the Department of Labor.  He alleged that MetLife had violated SOX by retaliating against him after he had reported employee misconduct to company management.  Compl. ¶ 55.  OSHA conducted a preliminary investigation, which did not validate Roganti's allegations.  *Id.* ¶ 68.  On October 8, 2003, OSHA sent a letter to Roganti stating that his complaint had been dismissed.  *Id.*; SOC ¶ 3.

On January 20, 2004, Roganti filed a second SOX complaint with OSHA, alleging further acts of retaliation.  Compl. ¶¶ 67–68.  In an order from OSHA dated November 23, 2004, these claims were also dismissed.  *Id.* ¶ 7.

**C. FINRA Arbitration**

On July 20, 2004, while the second SOX complaint was pending before OSHA, Roganti filed a Statement of Claim with the NASD in which he sought to arbitrate his disputes with MetLife.  Compl. ¶ 7.  At two points in the SOC, Roganti specified the relief he was seeking: (1) "back pay, liquidated damages, compensatory and punitive damages, attorneys' fees and an accounting," and (2) "an accounting of RR&A's revenues and expenses . . . appropriate back pay, front pay and reimbursement for lost benefits . . . liquidated damages . . . attorneys' fees, costs, disbursements and interest . . . punitive damages . . . [and] such further and additional relief as the Panel may deem just and proper."  SOC ¶¶ 2, 90.  FINRA summarized the relief Roganti was seeking as "unspecified compensatory damages, unspecified punitive damages, an accounting of R. Roganti & Associates' revenues and expenses, appropriate back pay, front pay and reimbursement for lost benefits, attorneys' fees, costs, disbursements, interest, and such

further and additional relief as the Panel may deem just and proper." FINRA Dispute Resolution Award ("FINRA Award") at 1.

The FINRA arbitration was conducted between February and August 2010 and spanned 32 hearing dates. *Id.* ¶¶ 25, 29. In August 2010, the FINRA arbitral panel held that MetLife was liable. They awarded Roganti $2,492,442.07 in "compensatory damages . . . above [MetLife's] existing pension and benefit obligation to Claimant." FINRA Award at 2. The arbitral award does not, however, explain how the arbitrators arrived at this sum, or, more concretely, for what the award was intended to compensate Roganti. The arbitral award does state: "Any and all relief not specifically addressed herein, including punitive damages, is denied." *Id.*

The issues resolved at the arbitration were limited to those raised in the Statement of Claim, namely that MetLife retaliated against Roganti for alerting management to alleged instances of improper business practices from 1999 through 2005. *Id.* ¶ 26.

**D.  Benefits Claim with MetLife**

On March 24, 2011, Roganti filed a benefits claim with MetLife, in its capacity as the Plan Administrator. He asked that the nearly $2.5 million arbitral award be treated as compensation for income which MetLife had improperly denied him, and that the award be factored into the calculation of the benefits to which he was entitled under his pension plan with MetLife. Compl. ¶ 82. He noted that his income at MetLife had always been treated as benefits-eligible; therefore, the FINRA award, as compensation for income which MetLife had wrongly denied him, should be treated similarly. *Id.* ¶ 156. Roganti asserted this claim as to each of the four MetLife-affiliated retirement plans named here as defendants. *Id.* ¶ 171.

In a letter dated June 16, 2011, MetLife denied Roganti's request. The letter—signed by Karen B. Dudas, Director of HR - Global Benefits ("Dudas Letter")—stated that MetLife had

4

denied the request because Roganti was no longer employed by MetLife at the time he received the award. *Id.* ¶ 137. Therefore, the award did not qualify as benefits-eligible compensation. Dudas Letter at 3; Compl. ¶ 143. The letter also noted that FINRA had not stated that the award was intended to serve as compensation for lost income; rather, FINRA had broadly termed its award "compensatory damages," and had specifically excluded all other forms of damages requested by Roganti. Dudas Letter at 3; Compl. ¶ 138. The letter also observed that the FINRA Award had not stated to which years of Roganti's employment the award applied. Accordingly, even if the award represented unpaid income, it would be impossible for MetLife to determine concretely how the award should affect Roganti's pension benefits. Dudas Letter at 4; Compl. ¶ 141.

On July 20, 2011, Roganti appealed MetLife's decision. Compl. ¶ 84. On August 30, 2011, MetLife again denied his claim, in a letter signed by Andrew J. Bernstein, Vice President - HR Benefits ("Bernstein Letter"). *Id.* ¶ 85. The Bernstein Letter reiterated that FINRA had awarded only general "compensatory damages" and had not specified that the award reflected relief for lost income. Bernstein Letter at 3. Noting the arbitral panel's statement that the award was "above [MetLife's] existing pension and benefit obligation to Claimant," the Bernstein Letter construed this language to mean that the award did not affect MetLife's obligations to Roganti under his pension plans. *Id.* The Bernstein Letter informed Roganti of his right to appeal under § 502(a) of ERISA. Bernstein Letter at 6; Compl. ¶ 86.

### E. The Present Lawsuit

On January 9, 2012, Roganti filed this lawsuit. His first cause of action, based on SOX, alleges that, in denying his benefits claim, MetLife was again retaliating against him for complaining about MetLife's business practices. Compl. ¶ 177. His second cause of action,

under ERISA, challenges MetLife's denial of Roganti's benefits claim as contrary to the terms of

the pension plans.  *Id*. ¶¶ 188–189.  Both claims solely challenge MetLife's denial of Roganti's

March 2011 request that the FINRA award be treated as benefits-eligible compensation.

Defendants move to dismiss on the grounds that (1) both claims are barred by res judicata

and collateral estoppel; (2) the SOX claim fails because Roganti did not exhaust his

administrative remedy; and (3) neither claim satisfies Rule 12(b)(6).  Oral argument on this

motion was held on June 11, 2012.

## II.  Applicable Legal Standard on a Motion to Dismiss Pursuant to Rule 12(b)(6)

In order to survive a motion to dismiss, a plaintiff must plead "enough facts to state a

claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007), and must "give the defendant fair notice of what the plaintiff's claim is and the grounds

upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The plaintiff cannot, however,

state merely conclusory allegations, but must, instead, plead "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Thus, to plead a claim with sufficient facial plausibility, a plaintiff is required to include "factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.*

In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in

the complaint and "draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433

F.3d 248, 249–50 (2d Cir. 2006) (internal quotation marks and citation omitted).  The Court may

look to the pleadings as well as to any documents incorporated therein, *see Int'l Audiotext*

*Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995), including, in this case, the

retirement plans referenced in the Complaint.  *See, e.g.*, Compl. ¶ 171.  Ultimately, where the

plaintiff's claims have not been "nudged . . . across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III. Discussion

Defendants move to dismiss both Roganti's SOX claim, alleging that MetLife impermissibly retaliated against him when it denied his benefits claims, and his ERISA claim, alleging that the MetLife Plan Administrator incorrectly determined that the FINRA award was not benefits-eligible compensation. Before turning to issues specific to each claim, the Court addresses Defendants' arguments that both claims are barred under the doctrines of res judicata and collateral estoppel.

### A.   Res Judicata

Under res judicata, or claim preclusion, a party to a litigation resolved on the merits is bound by the outcome of that dispute and, consequently, cannot relitigate claims that were or could have been raised in the prior forum. *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997). That rule applies equally to arbitrations. *Farber v. Goldman Sachs Grp. Inc.*, No. 10-cv-873, 2011 WL 666396, at *3 (S.D.N.Y. Feb. 16, 2012) (claims barred by a prior FINRA arbitration). To determine whether a claim is barred by res judicata, a court examines "'whether the same transaction [or] series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second [action] were present in the first.'" *Monahan v. City of New York Dep't of Corr.*, 214 F.3d 275, 286 (2d Cir. 2000) (quoting *NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983)).

The FINRA arbitration, on which Defendants base their res judicata argument, adjudicated four claims brought by Roganti: (1) the breach of contract claim, based on MetLife's reduction of Roganti's compensation; (2) violation of SOX retaliation provisions, based on

MetLife's retaliation against him for reporting questionable business practices; (3) for the value of services rendered by Roganti; and (4) for violating ERISA, on the theory that, in reducing Roganti's compensation, MetLife was also seeking to reduce his pension benefits. SOC ¶¶ 83–90.

Defendants contend that Roganti's claims here are barred as either identical to or substantially the same as the claims raised before the FINRA panel. Defs.' Br. 13. The Court disagrees. There are, to be sure, overlapping facts in the two proceedings, and the favorable arbitration outcome is a predicate to Roganti's core claim here that he is entitled to an upward adjustment of his pension benefits. However, the event which gives rise to Roganti's SOX and ERISA claims here *post-dates* the arbitration: Roganti claims that the March 2011 denial of benefits, not any prior retaliatory act, violated his rights.[3] Accordingly, notwithstanding the existence of overlapping facts, the doctrine of res judicata is no bar to Roganti's present claims. *See S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996); *United Techs. Corp.*, 706 F.2d at 1259–60.

### B. Collateral Estoppel

Collateral estoppel, or issue preclusion, applies when an issue raised in a subsequent suit was "actually and necessarily determined" in a prior litigation; this precludes a party from relitigating the same issue based on a different cause of action. *Montana v. United States*, 440 U.S. 147, 153 (1979) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)). To determine whether a party is collaterally estopped from raising an issue, a court looks at whether

---

[3] Roganti's ERISA claim here is different from that pursued in arbitration. His ERISA claim in the arbitration alleged that the reduction of his pay resulted from retaliation and was designed to reduce his pension benefits. His ERISA claim here alleges that the refusal to treat the FINRA award as benefits-eligible compensation violates the terms of the plans. These claims demonstrably arise out of separate events.

"(1) the identical issue was raised in a previous proceeding; (2) the issue was 'actually litigated and decided' in the previous proceeding; (3) the party had a 'full and fair opportunity' to litigate the issue; (4) the resolution of the issue was 'necessary to support a valid and final judgment on the merits.'" *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997) (quoting *Cent. Hudson Gas & Elec. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995)). Collateral estoppel attaches with equal force to arbitral proceedings. *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

Roganti's claims are not barred by collateral estoppel. Whether or not the 2011 denial of Roganti's request that MetLife designate the award as benefits-eligible violated either SOX or ERISA was, by definition, neither raised nor actually litigated in the FINRA arbitration in 2010, because it *could not* have been raised or litigated in the FINRA arbitration. That denial of Roganti's request had not yet occurred. It therefore follows that Roganti necessarily did not have a full and fair opportunity to litigate that issue in the prior arbitral forum.[4]

Accordingly, the Court holds that the SOX and ERISA claims are not barred by either res judicata or collateral estoppel.

### C. Sarbanes-Oxley

SOX supplies a private cause of action for employees who have suffered an adverse employment action after providing information, or otherwise assisting, in an investigation of violations of the securities laws. 18 U.S.C. § 1514A(b)(1). SOX affords whistleblower protection to any employee who provides information regarding potential violations to a "person

---

[4] Defendants fault Roganti for failing to seek a clarification from FINRA as to the specific basis for the award issued, Defs.' Br. 16, inasmuch as that would have been an important data point for MetLife in addressing the pension-calculation issue on which his current ERISA claim rests. Although Defendants are correct that such clarification (had it been obtained from the arbitrators) would have been useful in the current litigation, Roganti's failure to seek it does not give rise to a valid claim of collateral estoppel.

with supervisory authority over the employee." *Id.* § 1514A(a)(1)(C).  Roganti's complaints about unethical conduct to company management, including to MetLife's Chairman, clearly qualify him as a whistleblower under SOX.  Here, Roganti alleges that, when MetLife denied his benefits claim in 2011, it was retaliating against him for his earlier whistleblowing, between 1999 and 2005.  Compl. ¶¶ 159–168.

To properly file a claim under SOX, a plaintiff must exhaust certain administrative procedures.  Claimants must commence a civil action "by filing a complaint with the Secretary of Labor."[5]  18 U.S.C. § 1514A(b)(1)(A).  In the event that OSHA does not issue a decision on the matter within 180 days, the claimant may then file a complaint in district court.  *Id.* § 1514A(b)(1)(B); *see also* 29 C.F.R. § 1980.114.  Defendants argue that Roganti's SOX claim in this action is deficient because Roganti did not previously file a complaint with OSHA.  Defs.' Br. 17–18.  The Court agrees.

SOX's administrative procedures must be exhausted before a claimant may file suit in district court.  *See, e.g.*, *Gladitsch v. Neo@Ogilvy*, No. 11-cv-919, 2012 WL 1003513, at *5 (S.D.N.Y. Mar. 21, 2012); *Sharkey v. J.P. Morgan Chase & Co.*, 805 F. Supp. 2d 45, 51 (S.D.N.Y. 2011); *Trusz v. UBS Realty Investors*, No. 09-cv-268, 2010 WL 1287148, at *4–5 (D. Conn. Mar. 30, 2010); *Portes v. Wyeth*, No. 06-cv-2689, 2007 WL 2363356, at *3 (S.D.N.Y. Aug. 20, 2007); *Fraser v. Fiduciary Trust Co.*, No. 04-cv-6958, 2005 WL 6328596, at *6 (S.D.N.Y. June 23, 2005).  Where retaliation continues after the filing of a SOX complaint with OSHA, the claimant must file an amended complaint with OSHA, to ensure that that all SOX claims have been presented to the agency.  *Portes*, 2007 WL 2363356 at *6 (dismissing SOX

---

[5] Complaints must be filed with OSHA.  *See generally* OCCUPATIONAL HEALTH & SAFETY ADMIN., OSHA FACT SHEET: FILING WHISTLEBLOWER COMPLAINTS UNDER THE SARBANES-OXLEY ACT (2011), *available at* http://www.osha.gov/Publications/osha-factsheet-sox-act.pdf.

claim for failure to amend administrative complaint to include retaliatory conduct that occurred

after the filing of the initial complaint).  It was, thus, Roganti's duty to file with OSHA a claim

alleging MetLife's continued retaliation, and his failure to do so bars him from pursuing it here.[6]

Attempting to salvage the SOX claim, Roganti cites an exception to Title VII's

administrative exhaustion requirement, under which claims "reasonably related" to those in an

administrative complaint may be pursued in district court, even if never presented to the agency.

Pl.'s Br. 22–25.  However, courts that have considered the question have concluded that this

exception does not apply to claims brought under SOX.  *See Willis v. Vie Fin. Grp. Inc.*, No. 04-

cv-435, 2004 WL 1774575, at *6 (E.D. Pa. Aug. 6, 2004) (dismissing claims of plaintiff who did

not amend administrative complaint to include a subsequent act of retaliation); *see also Sharkey*,

805 F. Supp. 2d at 52–53; *Portes,* 2007 WL 2363356 at *6; *Fraser*, 2005 WL 6328596 at *6.  As

the *Willis* court explained, Title VII is intended to promote settlement, whereas SOX is "judicial

in nature and is designed to resolve the controversy on its merits."  2004 WL 1774575 at *5.  In

addition, the administrative schemes of the two statutes differ, in that

> [SOX] provides for an investigation of the actions alleged in the complaint, an
> issuance of findings and a preliminary order, a right to a hearing before an
> [Administrative Law Judge], a review before the Administrative Review Board,
> and a review before the Circuit Court of Appeals.  These procedures stand in
> contrast to those of Title VII, which are geared toward fostering settlement.  The
> purpose of permitting subsequent, unexhausted Title VII claims to proceed was
> to foster informal conciliation.

*Id.*  Accordingly, Roganti was not excused from exhausting his administrative remedies, and his

SOX claim must be dismissed.

---

[6] Roganti argues that he could not exhaust SOX's administrative procedures because by the time
OSHA ruled, the time to bring an ERISA claim would have lapsed.  Pl.'s Br. 22.  He similarly
argued before the Court that filing both claims together in district court was most efficient.
SOX, however, does not excuse noncompliance with its exhaustion requirements.  Roganti was
at liberty here to file his ERISA claim first, and to bring a SOX claim upon exhaustion of
administrative remedies.

### D.  ERISA

ERISA creates a private right of action to enforce the provisions of a retirement benefits plan.  29 U.S.C. § 1132(a)(1)(B).[7]  Roganti's claim under ERISA is twofold:  first, Roganti alleges that the FINRA arbitral award compensated him for unpaid wages that resulted from MetLife's retaliation against him; second, he argues that because the award constitutes back pay, it must be taken into account in calculating his pension benefits.  Compl. ¶¶ 106, 119.[8]

Here, plan documents for two defendant benefit plans clearly provide that salary is a form of benefits-eligible compensation.  *See* Bernstein Decl. Exs. C & E.[9]  Defendants note that, under those plans, to be benefits-eligible, compensation must be earned by a *current* employee for services rendered.  Therefore, the Defendants argue, because Roganti was no longer employed by MetLife at the time of the 2010 arbitral award, that award cannot be considered benefits-eligible.  Defs.' Br. 22–23.

The Court disagrees.  Although Roganti was no longer employed at the time of the award, if that award represented back pay to compensate him for services rendered while he was a MetLife employee, such compensation would properly be included in benefits calculations.

---

[7] ERISA itself does not provide a time limit within which civil actions must be filed after a denial of benefits.  Instead, the individual plans supply such a limit – in this case, six months.  *See Burke v. Price Waterhouse Coopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009) (citing *Miles v. N.Y. State Teamsters Conference & Pension Ret. Fund Emp. Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983)); Bernstein Letter at 6.

[8] Roganti's ERISA claim here is timely.  After his benefits claim was denied, the Plan Administrator notified him that he had six months to file suit in district court to contest the determination, and Roganti did so within that time frame.  Bernstein Letter at 6.

[9] These plans are the Metropolitan Life Retirement Plan for United States Employees, and the Savings and Investment Plan for Employees of Metropolitan Life and Participating Affiliates. The parties have not supplied the Court with excerpts of the other two plans' documents that squarely address how benefits-eligible compensation is calculated.

Put differently, MetLife's improper withholding of benefits-eligible pay during Roganti's employment should not prejudice him in the calculation of pension benefits.

Whether the arbitral award in fact represented back pay is vigorously disputed by the parties, and, at this juncture, appears to be the central issue on which Roganti's ERISA claim turns. The arbitral panel, in its brief decision awarding damages to Roganti, was far from pellucid on this point. It stated only this:

> After considering the pleadings, the testimony and evidence at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:
>
> 1. Respondent is liable for and shall pay to Claimant compensatory damages in the amount of $2,492,442.07 above its existing pension and benefit obligation to Claimant.
> 2. Any and all relief not specifically addressed herein, including punitive damages, is denied.

FINRA Award at 2.

This statement says nothing about what the award in fact represented. And Roganti's request for relief to the panel does not settle the issue, either. The SOC contains two paragraphs in which Roganti lists the types of relief sought. The first statement of relief requested asked for "back pay, liquidated damages, compensatory and punitive damages, attorney's fees and an accounting." SOC ¶ 2. The second paragraph, by contrast, requested "an accounting of RR&A's revenues and expenses . . . appropriate back pay, front pay and reimbursement for lost benefits . . . liquidated damages . . . attorney's fees, costs, disbursements and interest . . . punitive damages  . . . [and] such further and additional relief as the Panel may deem just and proper." SOC ¶ 90. Inasmuch as Roganti requested "compensatory damages," separate from his request for back pay, it is not certain that, as Roganti argues, *see* Pl.'s Br. 3–4, the arbitral panel intended the award of "compensatory damages" to represent back pay. At the same time, it is unclear

what else, apart from improperly reduced pay, the panel could have been "compensating" Roganti for with its award of nearly $2.5 million.  At oral argument, counsel for Defendants posited that FINRA may have intended for the award to compensate Roganti for a hostile work environment.  However, on the pleadings, the Court is unable to assess whether such a claim was even pursued in arbitration, let alone whether it is a plausible basis for the award.

In seeking dismissal, Defendants also rely on the panel's statement that the award was "above" MetLife's existing pension obligations.  Defs.' Br. 15.  However, this statement does not resolve the issue here.  Although far from a model of clarity, that statement can fairly be read to mean, simply, that the award augmented Roganti's existing monetary entitlement, with no implication, one way or the other, as to how the award might affect the calculation of Roganti's pension benefits going forward.

Given the lack of clarity of the arbitral award, read on its face, the Court cannot resolve, on a motion to dismiss, the disputed factual issue of whether the arbitral award represented back pay.  When deciding a motion to dismiss, a court must "draw all reasonable inferences in favor of the plaintiff."  *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).  At this stage, the Court must, therefore, construe the ambiguity in the award language in the light most favorable to Roganti.  Roganti has met his burden at the motion to dismiss stage of pleading an ERISA claim which is "plausible on its face."  *Twombly*, 550 U.S. at 570.  The motion to dismiss the ERISA claim is, therefore, denied.

At oral argument on the motion to dismiss, the Court raised with counsel the question of how the litigation should proceed on the ERISA claim, if it were permitted to go forward.  The Court was advised that the three-month time limit for Roganti to seek clarification of the award

from the arbitral panel has lapsed.  *See* 9 U.S.C. § 12.  Therefore, there is no possibility at this point to learn directly from the arbitrators what the award to Roganti represented.

The Court was further advised that the ERISA Plan Administrator, in denying Roganti's claim, did not review the arbitral record, but merely relied on the terse language in the panel's award.  In light of the Court's ruling on the motion to dismiss that that language is inadequate to resolve the issue at hand, the Plan Administrator's failure to look beyond that language was error:  The language in the award, for the reasons the Court has explained, simply does not come close to reliably resolving whether or not the award represented back pay cognizable in the calculation of Roganti's pension benefits.

Therefore, a close review of the arbitral record is at this point necessary, to permit a determination to be made, in the context of the evidence offered and arguments made by both sides at the arbitration, whether or not the award represented back pay.  Roganti's counsel represented to the Court that a calculation of his claims for back pay, based on the evidence before the arbitral panel, can result at a number quite closely approximating the award.  That may well be so, but conceivably, Defendants, upon a review of the arbitral record, could posit an alternative explanation, this time rooted in the materials supplied to the arbitral panel, as to what the panel's award represented.

In the Court's view, it is for the Plan Administrator, not this Court, in the first instance, to review the arbitral record and make this determination.  Assuming that the Plan Administrator determines that the award, or part of it, represented benefits-eligible compensation, the Plan Administrator can then proceed to recalculate Roganti's pension benefits.  The Court, therefore, directs the parties to meet and confer, and to supply the Court, within 10 days of this Order, with an appropriate proposed Order that returns this matter to the Plan Administrator for review

15

consistent with this Opinion and Order, while retaining jurisdiction for the Court to review the Plan Administrator's eventual determination. If the parties cannot agree jointly on the language of such an Order, each party is directed, within 10 days of this Order, to submit its own proposed language consistent with this Opinion and Order.

## CONCLUSION

Defendants' motion to dismiss Count One, the SOX claim, is GRANTED. Defendant's motion to dismiss Count Three, the ERISA claim, is DENIED. As to the ERISA claim, the parties are directed, within 10 days, to submit a proposed order to the Court, consistent with this Opinion and Order, directing the Plan Administrator to undertake a new review of Roganti's claims, taking into account the full record before the arbitral panel.

The Clerk of Court is directed to terminate the motion at docket entry number 6.

SO ORDERED.

Paul A. Engelmayer
_____
Paul A. Engelmayer
United States District Judge

Dated: June 19, 2012
New York, New York

16